UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY JEAN LOCKHART,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:14-cv-00121-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Dorothy Jean Lockhart, mother of Stephanie Lockhart ("Plaintiff")[1], seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI of the Social Security Act, respectively.[2] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to U.S.

---

[1] On October 27, 2014, Dorothy Jean Lockhart filed a declaration stating that her daughter, Stephanie Lockhart, is deceased. (Doc. 17). Subsequently, Plaintiff's mother, Dorothy Jean Lockhart, was substituted as Plaintiff by the Court on November 12, 2014. Doc. 20; *See* Stipulation, Doc. 19.

[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

Magistrate Judge Barbara A. McAuliffe.[3] After careful consideration of the entire record, including testimony and medical evidence and opinions, the Court will reverse the Commissioner's decision and remand to the ALJ for the calculation of an award for benefits.

**FACTS AND PRIOR PROCEEDINGS**

On December 7, 2009, Plaintiff filed applications for DIB and SSI alleging disability beginning October 15, 2009. AR 188–198. Plaintiff's claim was denied both initially on February 22, 2010, and upon reconsideration on October 28, 2010. Plaintiff requested and received a hearing before the Administrative Law Judge ("ALJ"), Sherrill A. Laprade Carvalho, who issued an order denying benefits on April 10, 2012. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 11, 2013, which made the Commissioner's decision final. This appeal followed.

**Plaintiff's Testimony**

On February 29, 2012, ALJ Carvalho presided over a hearing in Fresno, CA. AR 29–76. Plaintiff Stephanie Lockhart appeared and testified, and was represented by her attorney, Gina Fazio. Plaintiff's mother, Dorothy Jean Lockhart, also appeared and testified.[4]

Plaintiff testified that she lived at home with her mother. Her primary complaints surround her mental health impairments. Plaintiff stated she was unable to work because she constantly hears voices that tell her what to do. Plaintiff also feels like she "causes earthquakes and car crashes." AR 36. Plaintiff last worked doing in-home care, but due to increased isolation she felt she could no longer appropriately fulfill her work obligations and she quit. AR 36–37. Plaintiff testified that she now stays in her room 95% of the day because she is agoraphobic. *Id.* Plaintiff has been hospitalized for acting on what the voices tell her to do—"a couple of times for trying to kill [herself] and maybe once for throwing a computer at [her] brother." AR 37.

When asked about her prior drug use, Plaintiff testified that she used marijuana and alcohol in high school, but denied using any other illegal drugs. AR 38. It had been at least eight years since she

---

[3] The parties consented to the jurisdiction of U.S. Magistrate Judge Barbara A. McAuliffe in accordance with the provisions of 28 U.S.C. § 636(c). *See* Docs. 8, 10.
[4] Vocational Expert, Thomas C. Dachelet, also testified at the hearing; however, the VE testimony is unrelated to Plaintiff's appeal.

1  last used marijuana, and last drank alcohol in 1998 while she was working at the shipping company,
2  UPS. AR 39.

3  When asked about her daily activities, Plaintiff testified that her medication has increased her
4  weight significantly—approximately 100 pounds over two years. AR 44, which caused fatigue and
5  affected her ability to get around, take a shower, and put on her socks. AR 36, 46. Plaintiff
6  occasionally helps with dinner, vacuums about once a week, and does laundry about once every two
7  weeks. AR 46, 49. She does not wash dishes, clean, take out the garbage, or do yard work. AR 40–41.

8  Plaintiff will occasionally take the bus, but she did not like to go outside due to a fear of
9  confronting people.  Plaintiff believes that "the voices in her head are people talking about her." AR
10 49. The voices come and go at random. AR 51. She previously enjoyed skateboarding, camping, and
11 going to clubs, but no longer has hobbies. AR 42. Once she started doing in-home care, her depression
12 and voices worsened, she became more agoraphobic, and her physical condition and hygiene declined.
13 AR 42–43.  Plaintiff showers once every two weeks and weighs 370 pounds.

14 When asked about her treatment, Plaintiff testified that her medications caused her to twitch,
15 and she does not have health insurance. AR 43. She attends Fresno County Behavioral Health and
16 Community Medical for mental illness treatment. *Id.* She goes every three months, but does not
17 believe they care; they "just take notes and send [her] off." AR 43.  She was told about Blue Skies, a
18 counseling service for people with mental illness, but does not attend because she is afraid of acting on
19 the voices in her head and possibly hurting someone. AR 52.

20 The ALJ asked whether Plaintiff was aware that her medical records indicated that she used
21 substances other than marijuana and alcohol in the past.  AR 46–47. Plaintiff replied, "I don't recall
22 using any other drugs, besides marijuana and drinking. If there's someone saying that I did, I mean,
23 it's not true. I mean, I haven't used any other drugs." AR 47. Plaintiff also testified that she was
24 arrested for driving on a suspended license after her DUI conviction, but she did not remember getting
25 arrested any other time. *Id.* Plaintiff's attorney asked whether she remembered telling a doctor that she
26 used marijuana daily. AR 50. Plaintiff did not remember, but admitted to having memory problems.
27 *Id.*
28 ///

3

**Medical Record**

The entire medical record was reviewed by the Court. AR 314-436. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Plaintiff met the insured status requirements through December 31, 2013. AR 11. The ALJ found that Plaintiff had the following severe impairments: a schizoaffective disorder, cannabis dependence, polysubstance dependence in remission, degenerative joint disease, and obesity AR 13. With polysubstance abuse, Plaintiff does have an impairment or combination of impairments that meets or medically equals one of the listed impairments. AR 12.

The ALJ also found that if Plaintiff stopped her substance use, her impairments would not meet or equal any impairment in the listings. AR 14. She would have the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8-hour workday, stand and/or walk 2 hours each in an 8-hour workday, and occasionally stoop, balance, and kneel, but she could never climb. In addition, Plaintiff could sustain simple repetitive tasks. AR 15. The ALJ found that although Plaintiff would not be able to perform her past relevant work if Plaintiff stopped the substance use, there would be a significant number of jobs in the national economy that Plaintiff could perform. AR 21. The ALJ concluded that substance abuse was a contributing factor material to the determination of disability and therefore entered a finding that Plaintiff was not disabled. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing

the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff contends that the ALJ erred in determining that her drug abuse is a contributing factor to her disability.

In this case, the ALJ conducted the DAA analysis, first finding that Plaintiff's mental impairments met a Listing. Next, the ALJ considered whether Plaintiff would be disabled if she stopped the substance use. The ALJ determined that by removing the effects of the substance abuse Plaintiff would have a severe impairment or combination of impairments but they would not meet or medically equal any listed impairments. AR 14–15. Next, although Plaintiff's residual functional capacity ("RFC") would preclude past relevant work, there would be a significant number of other jobs in the national economy that Plaintiff could perform, absent her substance abuse. AR 22–23. Thus, the ALJ concluded that Plaintiff is not disabled because substance abuse is a contributing factor material to the determination of Plaintiff's disability. AR 23.

A claimant is ineligible for benefits if alcoholism or drug addiction would "be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). In a case with evidence of drug or alcohol abuse, the claimant bears the burden of proving that her substance abuse "is not a contributing factor material to her disability." *Parra*, 481 F.3d at 748. For purposes of determining whether a claimant's substance abuse is a material contributing factor, the critical question is whether the claimant would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). In making this assessment, the ALJ is to evaluate which of the claimant's physical and mental limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

Plaintiff agrees that she is disabled, but contends her prior history of drug abuse does not materially contribute to her disability. Although Plaintiff does not dispute that she abused substances well before her disability onset date, she maintains there are no incidents of drug use during the relevant period and, therefore, her impairments were not affected by drug use.

1. **<u>Substantial evidence does not support the ALJ's determination that Plaintiff's substance abuse was a material contributing factor to her disability</u>**

Plaintiff's primary argument is that the ALJ misread the medical records, which led to the ALJ's erroneous finding that substance abuse was a factor material to Plaintiff's disability. Specifically, there is no relevant medical evidence in the record that supports the ALJ's finding that Plaintiff engaged in substance abuse during the relevant time period. The Commissioner disagrees and points to the same evidence the ALJ relied on—Plaintiff's past history of drug use and a positive drug test from April 2010—as evidence of Plaintiff's ongoing substance abuse. AR 562. The Court will address each of the ALJ's relevant findings regarding substance use.

The ALJ relied on the following reasons to establish that Plaintiff suffered from drug addiction/alcoholism: (1) history of polysubstance dependence, AR 15; (2) Plaintiff's arrest for possession and DUI, AR 21; (3) Plaintiff's inconsistent statements of prior and current drug use, AR 16–19, 20–22; (4) Dr. Chofla diagnosed "rule out polysubstance dependence" in June of 2011, AR 18,

and Dr. Collado diagnosed polysubstance dependence in October of 2011, *id.*; (5) the state agency doctor's report shows ongoing drug use, AR 20; (6) Plaintiff was diagnosed with polysubstance dependence during 5150 in April 2010, AR 17; and (7) Plaintiff tested positive for marijuana during 5150 hold in April of 2010, AR 17.

Having reviewed the evidence relied on by the ALJ to conclude that Plaintiff's substance abuse was material to her disability, the Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff's prior, but not ongoing, drug use was a contributing factor to Plaintiff's disability.

First, the ALJ relied on Plaintiff's history of drug use and DUI conviction, which, aside from not being objective medical evidence, is prior to the disability onset date. *See* SSR 13-2p, at *10 ("[The ALJ will] not make a determination regarding materiality if a claimant has a history of DAA that is not relevant to the period under consideration."). Plaintiff reported to her physician in 2007 that she was previously convicted of a DUI. Although the date of her DUI conviction is unknown, Plaintiff discussed her DUI conviction in December 2007—well before her December 2009 disability onset date.

Second, Plaintiff's inconsistent reporting of prior and current substance use to medical personnel and at the hearing is an acceptable reason to discredit Plaintiff's subjective testimony, *see Smolen*, 80 F.3d at 1294, but it is not medical evidence that can establish the existence of drug addiction or alcoholism, *see id.* ("Self-reported drug or alcohol use. . . . [is] not objective medical evidence provided by an acceptable medical source.").

Third, the ALJ relied on Dr. Chofla's "rule out polysubstance dependence" in June 2011 as a diagnosis of Plaintiff's drug dependence. AR 18. However, this "rule out" reference means just the opposite, *i.e.*, that no such diagnosis was warranted. A "rule-out" notation means that the patient meets some criteria of the disorder but the doctor is unwilling to diagnose it and more information is needed. *See Cha Yang v. Comm'r of SSA*, 488 F. App'x 203, 207 (9th Cir. 2012)("rule out" notation is not a clear, affirmative diagnosis); *Langford v. Astrue*, 2008 WL 2073951, at *3 (E.D. Cal. 2008); *see also*, http://medical-dictionary.thefreedictionary.com/rule-out (a rule out is "an exclusion" of possible diagnoses; to rule out means to "eliminate as a serious diagnostic consideration"). Dr. Chofla met with

1    Plaintiff again in September 2011, and the same "rule-out" diagnosis appears on his progress notes.
2    AR 618–19. The ALJ also mentioned that in October of 2011, Dr. Collado diagnosed Plaintiff with
3    "polysubstance dependence." AR 18. However, this diagnosis is also a "rule-out" notation. AR 616–
4    17.  Dr. Collado's notes read "polysubstance dependence (not medi-cal covered) (rule out)."  AR 616.
5    The progress reports by Dr. Collado and Dr. Chofla are nearly identical with respect to the subjective
6    history sections ("Drugs: has claimed to deny. Denies any etoh or drugs. I quit at 25 so that's how I
7    lost my friends.") as well as the notes sections ("++ HX of poly sub in subjective claimed remission.").
8    AR 618–624. However, since both Dr. Chofla and Dr. Collado are simply restating Plaintiff's self
9    reported history of past drug use, this is not substantial evidence supporting the ALJ's finding that
10   Plaintiff currently suffers from DAA.

11           Next, the ALJ stated: "I give greater weight to the opinions of state agency doctors because
12   they are more consistent with the overall medical evidence of record discussed above, which shows
13   minimal findings on mental status examinations, improvement with medications, and ongoing drug
14   (marijuana) use." AR 20.

15           Reviewing physician, Dr. Ginsburg performed a Physical Residual Capacity Assessment on
16   February 16, 2010. AR 517–21. On February 22, 2010, reviewing physician, Dr. Murillo completed a
17   Mental Residual Functional Capacity Assessment, AR 522–54, a Psychiatric Review Technique, AR
18   525–35, and a Case Analysis detailing those findings. AR 536–40. Dr. Murillo made the following
19   note under Functional Information in the Case Analysis: "Note: clmt states to Kaiser 12/08, she has
20   stopped daily marijuana use, does not appear, DA&A issue." AR 536. Under the heading Significant
21   Objective Findings, Dr. Murillo then summarized Plaintiff's medical records from August 2007, to
22   January 19, 2010. AR 537–39. Dr. Murillo noted that in November 2007, Plaintiff "[t]akes Vicodin
23   and smokes marijuana for pain control." AR 537. Next, Dr. Murillo observed that on November 5,
24   2008, Plaintiff "states cannabis—daily for 'medicinal' purposes. Denies medical marijuana card." AR
25   538.

26           The only time "Cannabis Dependence" appears in Plaintiff's medical records after the
27   disability onset date is in Dr. Murillo's Psychiatric Review Technique. AR 531. Dr. Murillo's findings
28   are unremarkable, because as a reviewing physician, his findings merely restate what is in the record—

evidence of a history of substance abuse prior to the disability onset date of October 15, 2009. Further, the ALJ gave "greater weight to the opinion of the state agency doctors because they are more consistent with" either "the overall medical evidence of record" or "more consistent with . . . ongoing drug use." AR 20. Reliance on these opinions to establish the existence of a current drug addiction was error as the reviewing physicians were relying on information prior to Plaintiff's disability onset date. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

Finally, the ALJ noted that Plaintiff was diagnosed with polysubstance dependence during her 5150 hold in April of 2010. AR 17. There are two handwritten notes that diagnose Plaintiff with "P.S.D." (polysubstance dependence). AR 569, 571, 669, 671. However, those are not the only diagnoses from that hold: Dr. Ensom filed an Admission Physician's Assessment and a Discharge Note for that same 5150 hold, and which both diagnose Plaintiff with "Polysubstance Abuse in full, sustained remission." AR 573, 565. The fact that Dr. Ensom opined that Plaintiff was in full, sustained remission is further substantiated by Dr. Ensom's notes, which show that he was aware of Plaintiff's past drug use: "DRUGS: No drugs for 9½ yrs; used MJ, hx of IVDA (cocaine, speed), acid, mushrooms, crack." AR 572. It is not a rational interpretation of the evidence that Dr. Ensom would be aware of Plaintiff's detailed history with narcotics, and, as discussed below, that she tested positive for one under his care, and yet diagnosed her in full, sustained remission.

The ALJ also relied heavily on an alleged positive marijuana test, noted by Dr. Ensom, from Plaintiff's 5150 hold in April of 2010. AR 562–63. The ALJ interpreted a handwritten symbol—a circled plus sign—followed in handwriting with: "marijuana, past IVDA 10 years ago—acid, meth, cocaine," *id.*, as evidence that Plaintiff tested positive for marijuana. AR 17, 21 (citing Exhibits 11F, pp.4–25, and 20F, pp. 7–15.). This symbol appears next to the field titled Drugs under the SH section (social history) of the emergency room intake notes at St. Agnes. *Id.* Also in this section, Tobacco and ETOH are each marked with a slashed circle. *Id.* However, Dr. Habibe's General Physician Orders from St. Agnes indicate no labs were done. AR 556. The date and time on the police report says April 10, 2010, at 1825 hours. AR 553. Plaintiff arrived at St. Agnes at 1843, AR 561, and was registered and admitted at 1902. AR 557. Dr. Habibe's emergency room notes were written at 1920. AR 562.

9

Nowhere else in the records—referenced by the ALJ, the parties, or otherwise—is there any indication that a drug test was administered. The timing of Plaintiff's hospital admission and the related treatment notes detailing the time of her treatment corroborates a theory that Plaintiff was admitted and released without a drug test. Therefore, it is unclear whether Plaintiff relayed a history of marijuana use as she did on numerous times before, or whether she tested positive on this one occasion for marijuana.

Nonetheless, the ALJ's findings are largely dependent on the ambiguous handwritten symbol in the physician's notes from Plaintiff's 5150. Although the ALJ's findings must be upheld if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision," *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002), that a drug test was administered, for which Plaintiff tested positive, is not a rational interpretation of this handwritten symbol. If a drug test was administered, Dr. Habibe's order would have indicated as much, but his notes state the opposite—that no labs were ordered. Additionally, Dr. Ensom diagnosed Plaintiff in full remission. Further, even if the handwritten symbol was in fact a positive drug test, it would not establish the existence of a Substance Use Disorder for purposes of materiality. *See* SSR 13-2p, *33 ("A single drug or alcohol test is not sufficient to establish *DAA* as a medically determinable impairment, nor does it provide pertinent information that can help us determine whether *DAA* is material to a finding of disability.").

While neither party genuinely disputes that Plaintiff's overall medical record reflects a prior history of substance abuse, only prior to the disability onset date of October 15, 2009, however, do those records indicate Plaintiff used marijuana, and only a portion of those records diagnose cannabis dependence. AR 315, 357, 363, 378, 379, 383, 389, 401, 406. In fact, the records indicate that around November 2008 Plaintiff began to reduce her marijuana use and was determined to stop entirely. AR 378, 383, 401, 406. Those records also indicate Plaintiff successfully stopped using marijuana as early as January 2009, AR 429, and she continued to report no marijuana use in May, August, October, and November 2009 as well. AR 450, 455, 470, 486, 493. The language changes around the disability onset date, at which point the records begin to reflect a "prior history of substance abuse." AR 501, 507.

Prior to applying a drug addiction or alcoholism analysis, the ALJ must first have "medical evidence" of substance use disorder, which can only be provided by an acceptable medical source. The claimant bears the burden during the second analysis to prove substance use is not a contributing factor material to her disability. *Parra*, 481 F.3d at 748. This burden only shifts to Plaintiff in the event the medical records contain medical evidence of a substance use disorder. Here, Plaintiff provided significant objective medical evidence from acceptable medical sources that while she abstained from drugs after her onset date, her disability remained. *See* 20 CFR §§ 404.1513, 1535, and §§ 416.913, 416.935. For these reasons, the Court concludes that the ALJ's finding that Plaintiff currently suffers from DAA is not supported by substantial evidence.

### 2. The ALJ Improperly Weighed the Medical Evidence

Plaintiff's next argument is that the ALJ committed reversible error by failing to give legally adequate reasons for rejecting the opinions of every psychiatrist and psychologist who examined or treated her.

There are three types of medical opinions (treating, examining, and nonexamining) and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The Court "afford[s] greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Likewise, more weight is given to the opinion of an examining source than to a nonexamining source. *See Lester*, 81 F.3d at 830-31; *Pitzer v. Sullivan*, 908 F.2d 502, 506 & n.4 (9th Cir. 1990). "The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing § 404.1527(b)).

If a treating doctor's opinion is not contradicted by another doctor (*i.e.*, there are no other opinions from examining or nonexamining sources), it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Ryan v. Comm'r of Soc. Sec.*

*Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Lester*, 81 F.3d at 830. If the treating or examining physician's opinion is contradicted, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting that opinion. *See Valentine*, 574 F.3d at 692; *see also* §404.1527(d)(2). The law is clear in this circuit that the ALJ must defer to the treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record. *See Turner*, 613 F.3d at 1222. However, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation marks and citation omitted).

The ALJ's personal observations of the claimant at the hearing do not constitute a substantial reason for rejecting the opinions of a treating physician when the claimant professes psychological impairment. *See Montijo v. Sec'y of Health & Human Servs.*, 729 F.2d 599, 602 (9th Cir. 1984) (per curiam). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).. "[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421–22.

A. **Robert L. Morgan, Ph.D.**

Examining physician, Dr. Morgan met with Plaintiff on January 27, 2012 for a Comprehensive Psychological Evaluation. AR 637–44. He also filed a Psychiatric Review Technique, 645–47. Dr.

Morgan reviewed Fresno County Mental Health records from 2011, and he reviewed a prescription record from Fresno County Mental Health for 2010 and 2011. Dr. Morgan determined that Plaintiff met listing 12.03 for Schizophrenic, Paranoid and Other Psychotic Disorders. He found marked limitations in activities of daily living; marked limitations in difficulties in maintaining social functioning; marked limitations in difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration.

Dr. Morgan noted that Plaintiff denied the use of alcohol or illegal drugs, and found "no evidence of malingering or fictitious behavior, no bizarre or unusual behaviors." He also found that Plaintiff was experiencing feelings of sadness, failure, hopelessness, and thoughts of suicide. AR 641. She has trouble making decisions, has feelings of worthlessness, and has lost interest in most of the things in her life that she used to derive pleasure from. *Id.* She remains irritable, fatigued, and has completely lost interest in sex. AR 641–42. Plaintiff was having "severe difficulty with feelings that someone else can control her thoughts . . . that she is watched or talked about by others," as well as "fears of death or dying, . . . trouble concentrating, feeling tense, feelings of guilt, spells of terror or panic and the idea that something is wrong with her mind." AR 624. Dr. Morgan noted that Plaintiff's "profile is marked by significant elevations across several scales indicating a broad range of clinical features and increasing the possibility of multiple diagnoses." *Id.* Dr. Morgan found profiles of this type "usually associated with marked distress and severe impairment in functioning," which suggests "significant thinking and concentration problems accompanied by prominent distress and dysphoria." *Id.* Plaintiff is likely to remain "withdrawn and isolated, feeling estranged from the people around her . . . . and this hopelessness and pessimism combined with the likelihood of impaired judgment may place her at increased risk for self harm." *Id.* Plaintiff's "marked peculiarities in thinking and experience . . . . are often associated with an active psychotic episode with poor judgment and impairment in reality testing is a hallmark characteristic." *Id.*

Dr. Morgan also found it likely that Plaintiff "experiences unusual perceptual events or full-blown hallucinations." *Id.* She is also likely to be socially isolated, "[h]er thought processes are likely to be marked by confusion, distractibility, and difficulty concentrating, and she [may] experience her thoughts as blocked, withdrawn or somehow influenced by others." *Id.*

Dr. Morgan determined Plaintiff met criteria for Listing 12.03, and diagnosed schizoaffective disorder, PTSD, arthritis in the knees, lower back pain, and dizziness, with a GAF of 50. AR 642–43. He determined Plaintiff was presenting with "psychotic features and deterioration that is persistent as evidenced by both delusions and hallucinations." AR 643.

The ALJ gave "little weight to the opinion of psychological consultative examiner Dr. Morgan [], as I do not believe that his 'marked' mental limitations are indicative of the claimant's mental functioning when not using drugs." AR 20.

Although, Dr. Morgan's report is the most recent, updated, and thorough consultative examination in the record, the ALJ rejected Dr. Morgan's opinion for drug-related reasons. This was error as the ALJ was acting on the erroneous interpretation of the evidence that a medically determinable substance use disorder existed. Thus, the reason for rejecting Dr. Morgan's opinion is not supported by substantial evidence.

### B. Josefina A. Collado, M.D.

Dr. Collado met with Plaintiff for the first time in September 2010, at which point Dr. Collado diagnosed Plaintiff with Schizoaffective Disorder, Personality Disorder, Obesity, Poor Social Skills, with a GAF of 55. The next time Dr. Collado met with Plaintiff was October, 2011, where Dr. Collado diagnosed Plaintiff with Schizoaffective Disorder, Rule-Out Polysubstance Dependence, Rule-Out Dependent Personality Disorder, Obese, with a GAF of 56. On this October progress note, Dr. Collado acknowledged Plaintiff's prior history by noting a desire to decrease Plaintiff's Xanax and discontinue in the future, but noted "(++Hx of polysub in subjective remission) pt reports she rather follow with another provider that will cont life long benzo maint." AR 617.

As mentioned above, Dr. Collado's "rule-out" notations are not diagnoses. Dr. Collado submitted a Mental Disorder Questionnaire dated February 9, 2012, stating that Plaintiff's condition was not likely to improve in the next 12 months. AR 648–49.

The ALJ accorded little weight to "the check-box" statement of Dr. Collado "because it does not consider the claimant's mental status when engaging in drug use." AR 20. The ALJ found Dr. Collado's opinion "conclusionary [sic] and brief, and unsupported by clinical findings." *Id.* On Plaintiff's last treatment with Dr. Collado, Plaintiff's "stable" condition and GAF score of 56 are

"inconsistent with [Dr. Collado's] opinion that the claimant has significant impairments that would impair her ability to work." *Id.* Lastly, the ALJ found that "the records show improvement of the claimant's mental symptoms when she is compliant with medications, and mental status examinations have yielded only minimal findings which do not support a finding of disability." *Id.*

The Court finds that the ALJ considered Dr. Collado's opinion in conflicting ways. First, the ALJ relied on Dr. Collado's diagnosis of polysubstance abuse to reject Plaintiff's credibility and to demonstrate an overall inconsistency in the record of substance use and diagnoses. Then, the ALJ rejected Dr. Collado's opinion because "it does not consider [Plaintiff's] mental status when engaging in drug use." AR 20. Although the ALJ does not need to accept an opinion that is brief, conclusory, and unsupported by findings, *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009), the ALJ was still required to provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation marks and citation omitted).

The ALJ rejected Dr. Collado's medical opinion because of a presumption that Plaintiff was engaging in substance abuse. As stated previously, there is no evidence to substantiate the ALJ's premise. For this reason, the ALJ improperly assessed Dr. Collado's medical opinion.

### C. Treating Physicians Drs. Patel, Ensom, and Margot

Sugnaykumar P. Patel, M.D., treated Plaintiff at Kaiser for a year leading up to her disability onset date, at which point she transferred care to Fresno County. Dr. Patel diagnosed Plaintiff with schizoaffective disorder in October, 2009. AR 484–89. The ALJ did not provide a reason for rejecting Dr. Patel's diagnosis.

Richard Margot, Ph.D., certified Plaintiff for temporary disability in October, 2011. Dr. Margot noted, "Client is suffering with schizoaffective disorder, which impairs her memory, concentration, leaving her home, reality testing and being around others." AR 614-15. Dr. Margot noted that Plaintiff's mental condition was not related to drug and/or alcohol abuse. AR 615. The ALJ gave little weight to Dr. Margot's opinion because there were "no supporting treatment records." AR 18.

In December 2009, Dr. Ensom treated Plaintiff at Urgent Care through Fresno County Department of Behavioral Health. Dr. Ensom recognized Plaintiff's long history with that department dating "back to 1995 (Cannabis abuse and –induced anxiety disorder)," as well as alcohol and meth abuse. AR 589. He noted that Plaintiff was hearing voices, experiencing anxiety and anger, and her appearance was "[w]ell-groomed, obese, tearful." *Id.* Dr. Ensom diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe, without psychotic features; Borderline Personality Disorder; and provided a GAF score of 45. AR 589, 593. He certified Plaintiff for disability benefits for one year. AR 503.

Dr. Ensom also treated Plaintiff during her 5150 hold in April of 2010, where he diagnosed Plaintiff with: Psychotic Disorder NOS (not otherwise specified); Dysthymic Disorder; Polysubstance Dependence in full, sustained remission; Personality Disorder NOS with borderline traits; Obesity; and a GAF of 40. AR 565, 570, 572–73. Dr. Ensom noted: "No drugs for 9 ½ yrs; used MJ, hx of IVDA (cocaine, speed), acid, mushrooms, crack." AR 572.

Dr. Ensom treated Plaintiff again in May of 2010, where he diagnosed Schizoaffective Disorder, Personality Disorder NOS, Obesity, Social Isolation, and GAF 50. In Dr. Ensom's notes from May, he noted: "Denies recent [drug] use. Used MJ in past." AR 590.

The ALJ gave "this opinion little weight because it is inconsistent with the medical evidence of record discussed herein. . . . [and] Dr. Ensom did not address the claimant's drug use." AR 16. The ALJ also noted that since Plaintiff told Dr. Ensom in May of 2010 "that she had not used marijuana for 6 months, [that] indicates she could have been using marijuana at the time of [his] opinion []. Furthermore, in January of 2010, mental status examination by Dr. Ensom was essentially within normal limits, although the claimant appeared depressed with constricted affect." *Id.*

The Court finds that the ALJ provided an adequate reason for rejecting Dr. Margot's opinion but failed to provide specific and legitimate reasons supported by substantial evidence in the record for not according controlling weight to Plaintiff's treating physicians, Drs. Patel and Ensom. *See Turner*, 613 F.3d at 1222. The ALJ did not provide a reason for rejecting Dr. Patel's opinions and rejected Dr. Ensom's opinion because he "did not address the claimant's drug use." On the contrary, the Court finds that Dr. Ensom did address Plaintiff's history of drug use and determined that drug addiction or

16

alcoholism was no longer a factor in Plaintiff's diagnoses. The ALJ's reasons for rejecting Dr. Ensom's medical source opinion is again predicated on the existence of a substance use disorder. Consequently, like Dr. Collado's opinion, the ALJ improperly discredited Dr. Ensom's opinion.

Here, the ALJ was required to set forth specific reasons for rejecting the opinions of the uncontradicted treating and consultative physicians. The ALJ recognized that there was consensus between the physicians that Plaintiff suffered from severe mental health impairments that affected her ability to perform work, but concluded her substance abuse contributed to her disability. The Court finds that the given justifications for rejecting the medical evidence does not rise to the requisite level of specificity and clarity to reject uncontradicted medical opinions. Nor do they rise to the level of specific and legitimate reasons required for the ALJ to reject conflicting opinions between examining physicians. These omissions constitute reversible legal error.[5]

As is discussed above, the Court finds reversible error in the ALJ's findings based on the evaluation of the medical evidence. An ALJ's finding that the substance use is material must be supported with evidence in the record that is fully developed and that establishes that the claimant's co-occurring mental disorder would improve to the point of nondisability in the absence of DAA. *See Sousa*, 143 F.3d at 1245; SSR 13-2p, 2013 SSR LEXIS 2, 78 Fed. Reg. at 11943-44. Here, to conclude that Plaintiff's substance use was material to her disability, the ALJ discounted medical opinions that indicated Plaintiff's impairments because they did not establish that Plaintiff's substance use contributed to Plaintiff's symptoms. This was reversible error as the Court has already indicated that the ALJ failed to perform the proper analysis of Plaintiff's substance abuse disorder. Accordingly, the court will reverse the ALJ's opinion and decline to reach the merits of her other challenges.

///

---

[5] Because the Court reverses this case, the Court dispenses with an exhaustive analysis of the ALJ's assessment of the credibility of Plaintiff's and Plaintiff's mother. The Court need not consider Plaintiff's argument regarding credibility in light of the need for reversal on other grounds. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we reverse, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.")

**REMAND**

The only issue left is whether to remand for further administrative proceedings or for payment of benefits. Plaintiff argues that this case satisfies the Ninth Circuit's credit-as-true doctrine. That is, the Court can remand to the ALJ with instructions to award benefits if each of the following three requirements are satisfied: (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony or medical opinions; and (3) if that evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The Commissioner, however, contends that the proper remedy would be to remand for further administrative proceedings. Although the Ninth Circuit has developed this credit-as-true rule, Commissioner adds, the courts have the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The parties are in agreement that this Court may remand for payment of benefits where a fully developed record renders further administrative proceedings meaningless. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). When a court reverses the ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)). The Court finds this case to be one of those rare circumstances. The ALJ found Plaintiff disabled in the first five-step sequential evaluation, and removing the Substance Use Disorder from that first evaluation does nothing to the functional limitations that were found in the first evaluation; the disability determination in the first evaluation remains undisturbed. *See* 20 CFR §§ 404.1513, 1535, and §§ 416.913, 416.935. There is one additional consideration not mentioned by the parties: Plaintiff is deceased, she died seven months after this appeal was filed. (Doc. 17). Accordingly, there can be little to no additional objective medical findings to supplement this record.

In closing, this record is fully developed and additional proceedings would not be helpful. When the evidence that the ALJ rejected is given its proper weight (*e.g.*, Plaintiff's testimony, Dr.

Ensom's opinion, Dr. Collado's opinion, Dr. Patel's opinion, and Dr. Morgan's opinion) it becomes clear that Plaintiff meets Listing 12.03. As a result, the Court will reverse the Commissioner's decision and remand to the ALJ for payment of benefits. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (stating that the court should remand for payment of benefits when evidence that was improperly rejected demonstrates that the claimant meets or equals a Listing); *Smolen*, 80 F.3d at 1292 (same); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (same). *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989) (crediting as true those examining or treating physician opinions that the ALJ rejected without providing legally adequate reasons).

## **ORDER**

Based on the foregoing, IT IS THEREFORE ORDERED THAT the Commissioner's decision is REVERSED and REMANDED pursuant to 42 U.S.C. § 405(g) for an immediate award of benefits.

IT IS SO ORDERED.

Dated: **October 1, 2015**          /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE